OPINION
Clarence and Sylvia Rihm appeal from a judgment of the Montgomery County Court of Common Pleas which awarded summary judgment to Joseph Wade and Breidenbach Swords ("Breidenbach").
The undisputed facts established the following. During the early 1980s, the Rihms sought tax advice and preparation services from Wade, who was employed as a CPA by an accounting firm named William S. Fry Co. At this firm, Wade worked with Peter Breidenbach and Gary Swords, who later began the firm of Breidenbach and Swords. In 1983, Wade discussed a tax shelter called Barrister Equipment Associates ("Barristers") with the Rihms. Between 1981 and 1984, the Rihms purchased a one-half share of Barristers.
In September of 1984, Barristers notified the Rihms that the Internal Revenue Service ("IRS") planned to challenge the tax credits that the Rihms had taken from the Barristers investment. The Rihms discussed this letter with Wade and decided to allow Barristers to handle the IRS challenge for them. In December of 1984, the IRS sent the Rihms a letter about the possible disallowance of the tax credits.
On September 10, 1985, the Rihms were advised that the IRS was not going to allow the Barristers tax credits. The Rihms discussed the situation with Wade and eventually retained legal counsel to challenge the IRS's decision to disallow the tax credits.
In February of 1989, the Rihm's legal counsel sent them a letter stating that the IRS was about to conclude its audit of Barristers and would soon be sending them a Final Partnership Administrative Adjustment ("FPAA"). Their legal counsel also advised them that a challenge to the IRS's decision to disallow the tax credits would be "meritless."
On September 5, 1989, the IRS sent the Rihms a FPAA indicating that the IRS was disallowing the Barristers tax credits. In March of 1995, the Rihms received two notices of deficiency from the IRS stating that they owed additional income tax for 1983 and 1984 due to the tax credit disallowance.
On January 24, 1997, the Rihms filed a complaint against Wade and Breidenbach alleging, inter alia, that Wade had given them negligent investment advice. Wade and Breidenbach moved for summary judgment on January 5, 1999 and February 16, 1999 respectively. The trial court granted their motions on May 4, 1999 and filed a final judgment entry dismissing the case on May 6, 1999.
The Rihms advance a sole assignment of error on appeal.
 I. THE TRIAL COURT ERRIED [sic] WHEN IT FOUND THAT THE STATUTE OF LIMITIATIONS [sic] BARRED THE APPELLANTS' COMPLAINT FOR NEGLIGENCE AND SUSTAINED THE APPELLEES' MOTIONS FOR SUMMARY JUDGMENT.
The Rihms argue that the trial court erred when it ruled that the statute of limitations for their claim of accountant negligence had expired. They claim that the statute of limitations did not begin to run until there was an invasion of their legally protected interests, which they believe occurred on March 4, 1996 when the IRS notified them of the deficiency in their income taxes for 1983 and 1984. In support of their argument, they assert that the discovery rule or the delayed occurrence of damages rule should be applied to the facts of their case.
The Rihms argue that the trial court should have applied the discovery rule to their case to prevent the statute of limitations from starting to run until they had discovered that they had suffered an injury. In support of this claim, they cite Justice A. William Sweeney's dissent in Investors REIT One v. Jacobs
(1989), 46 Ohio St.3d 176, 546 N.E.2d 206.
"The `discovery rule' generally provides that a cause of action accrues for purposes of the governing statute of limitations at the time when the plaintiff discovers or, in the exercise of reasonable care, should have discovered the complained of injury." Investors REIT One, 46 Ohio St.3d at 179,546 N.E.2d at 209. In his partial dissent in Investors REIT One, Justice Sweeney stated that he "believe[d] that in the interest of justice, fairness and consistency, Ohio should * * * adopt a discovery rule for determining the accrual date for causes of action sounding in accountant malpractice." Id. at 184,546 N.E.2d at 213 (Sweeney, J., concurring in part and dissenting in part).
The majority in that case, however, held that "[t]he discovery rule is not available to claims of professional negligence brought against accountants." Id. at paragraph 2a of the syllabus. Further, the Ohio Supreme Court has reevaluated and reaffirmed its holding in Investors REIT One. Grant Thornton v.Windsor House, Inc. (1991), 57 Ohio St.3d 158, 160,566 N.E.2d 1220, 1222, certiorari denied (1991), 502 U.S. 822, 112 S.Ct. 84. Thus, the Rihms' argument that the trial court should have applied the discovery rule to their case is not persuasive.
The Rihms also argue that the trial court should have applied the delayed occurrence of damages rule to their case to delay the commencement of the statute of limitations. In support of this argument, they point to Judge John F. Corrigan's dissent inPhilpott v. Ernst Whinney (Nov. 25 1992), Cuyahoga App. No. 61203, unreported.
In Philpott, the alleged negligent acts of the accountant occurred sometime before July of 1984, but the plaintiffs did not file suit until July of 1989. Philpott, Cuyahoga App. No. 61203, at *3. The majority stated that they "specifically reject[ed the plaintiffs'] contention * * * that the cause of action did not accrue until the IRS issued its deficiency assessments [to the plaintiffs] in early May of 1987 * * * and [found] that [the plaintiffs' argument was] an ineffective attempt to circumvent the four-year statute of limitations [for accountant negligence] contained in R.C. 2305.09." Id.
In his partial dissent in Philpott, Justice John F. Corrigan stated the following:
 In determining when a cause of action "arose," and the statute of limitations begins to run, it is a general rule that a cause of action accrues at the time the wrongful act was committed. * * * It has been noted, however, that in some instances, application of this general rule would lead to the unconscionable result that the injured party's right to recovery can be barred by the statute of limitations before he is even aware of its existence. * * * Therefore, [i]n such cases, a cause of action for damages does not arise until actual injury or damage ensues. * * * That is, the tort is not deemed complete until there has been [an] invasion of a legally protected interest of the plaintiff. * * *
 While the "discovery rule" is not applicable to claims of professional negligence brought against accountants, * * * [the above] rule is not a "discovery rule," as it deals with the delayed occurrence of damages, not the discovery of the injury. * * *
 By application of the delayed occurrence of damages rule, an action against an accountant for negligent preparation of tax returns has been held to accrue when the plaintiff is notified of an I.R.S. assessment, and not when the allegedly negligent accounting services were rendered. * * *
Id. at *4-5 (John F. Corrigan, J., dissenting in part) (citations and quotations omitted).
Judge Corrigan's above discussion concerned the plaintiff's claims for negligent tax return preparation. Id. at *4. He specifically "concur[red] with the majority's determination that [the] plaintiff's claim for negligent investment advice [was] barred by the statute of limitations." Id. The Rihms' complaint against Wade alleges that Wade was negligent in advising them to invest in Barristers; the Rihms do not dispute that Wade correctly prepared their tax returns. Thus, the Rihms' reliance on Judge Corrigan's dissent is misplaced.
The Rihms also point to Gray v. Estate of Barry (1995),101 Ohio App.3d 764, 656 N.E.2d 729 in support of their argument that the delayed occurrence of damages rule should be applied to their case.
In Gray, the Sixth District Court of Appeals agreed with Judge Corrigan's dissent in Philpott and applied the delayed occurrence of damages rule to conclude that the statute of limitations for accountant negligence did not begin to run until the plaintiff had been notified by the IRS that a penalty had been assessed against him. Gray, 101 Ohio App.3d at 768-769,656 N.E.2d at 731.
The plaintiff in Gray alleged that the accountant had negligently failed to file an IRS form 5500R along with the rest of his tax return in 1987. Id. at 766, 656 N.E.2d at 729. Thus, like Judge Corrigan's dissent in Philpott, the Gray case concerned alleged negligent tax preparation, not alleged negligent investment advice, for which relief is sought in this case.
 Furthermore, the delayed occurrence of damages rule has been rejected by a number of courts. Fronczak v. Arthur Andersen, L.L.P.
(1997), 124 Ohio App.3d 240, 243-245, 705 N.E.2d 1283, 1285-1286, discretionary appeal not allowed (1998), 81 Ohio St.3d 1502, 691 N.E.2d 1061; Hater v. Gradison Div. of McDonald Co. Securities, Inc. (1995), 101 Ohio App.3d 99, 110, 655 N.E.2d 189, 196, discretionary appeal not allowed (1995), 72 Ohio St.3d 1539, 650 N.E.2d 479; Riedel v. Houser (1992), 79 Ohio App.3d 546, 549, 607 N.E.2d 894, 896. Thus, the Rihms' argument that the trial court should have applied the delayed occurrence of damages rule to their case is not persuasive.
In Investors REIT One, the Ohio Supreme Court explicitly stated that the four-year statute of limitations in R.C.2305.09(D) which governs accountant negligence claims begins to run when the alleged negligent act is committed. Investors REITOne, 46 Ohio St.3d at 182, 546 N.E.2d at 212. "By holding that the statute of limitations began to run `when the allegedly negligent act was committed,' the court in [Investors] REIT One
* * * meant exactly that: the date upon which the tortfeasor committed the tort, in other words, when the act or omission constituting the alleged professional malpractice occurred."Hater, 101 Ohio App.3d at 110, 655 N.E.2d at 196. Further, we note that "the great weight of authority * * * has * * * followedInvestors REIT One and Grant Thornton in holding that accountant-negligence claims resulting from allegedly improper tax advice accrue at the time the alleged negligence was committed and not when the IRS subsequently questions the tax return."Fronczak, 124 Ohio App.3d at 244, 705 N.E.2d at 1286.
Wade allegedly discussed the Barristers tax shelter with the Rihms in 1983. The Rihms did not file suit until 1997, more than four years after the alleged negligent act was committed. Thus, the trial court correctly concluded that the statute of limitations had expired.
As the Rihms' sole assignment of error is overruled, the judgment of the trial court will be affirmed.
GRADY, P.J. and BROGAN, J., concur.